(No. 18755.—

THE THIRD NATIONAL BANK OF MT. VERNON *et al.* Appellees, *vs.* EDWARD J. NORRIS *et al.*—(ARTHUR E. WILLIS *et al.* Appellants.)

*Opinion filed June 23, 1928—Rehearing denied October 6, 1928.*

E. M. PEAVLER, and CONRAD SCHUL, for appellants.

STANLEY WATSON, and GILBERT & GILBERT, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Jefferson county entered a decree at its July term, 1927, setting aside a deed of Edward J. Norris to Myrtle E. Willis, vesting the title to the land conveyed in Ray S. Mannen, trustee in bankruptcy of Norris, and ordering Myrtle E. Willis, Arthur E. Willis and Nor-

ris to deliver possession to the trustee, and the last three named have appealed from the decree.

The original bill was filed on November 29, 1926, by the Third National Bank of Mt. Vernon, a judgment creditor of Edward J. Norris to the amount of $5231.03, alleging the execution of the deed in question by Norris on December 31, 1925, to Myrtle E. Willis for a pretended consideration of $10,000, conveying to her 320 acres of land in Jefferson county with the intent to hinder, delay and defraud the complainant; that the premises were held in trust for the use and benefit of the grantor and for the purpose of preventing the levy on them and a sale under execution. On January 4, 1927, Norris was on his own petition adjudicated a bankrupt. Ray S. Mannen became his trustee in bankruptcy and on his motion was allowed to join in the bill of complaint. The decree sets aside the deed on the application of the trustee, vests the title in him for the benefit of the creditors of the estate and directs the surrender of possession to him.

The evidence shows that at the time of the conveyance in question E. J. Norris owed debts amounting to $35,000 or $40,000, nearly all of them as surety for his son, G. O. Norris. His property was not equal in value to the amount of these debts. G. O. Norris, though insolvent, was the owner of property worth several thousand dollars. Among his debts for which his father was surety was one of $10,000 to Arthur E. Willis, which had been running since 1919. Myrtle E. Willis, Arthur's wife, was E. J. Norris' niece. The $10,000 was a loan made to G. O. Norris out of the funds of the husband and wife in the Waltonville bank, for which they received the note of G. O. Norris, Nettie Norris, his wife, J. D. Norris, his uncle, and E. J. Norris, his father, dated November 26, 1919, and due in three years. This note was taken up at maturity and renewed by the note of G. O. Norris, Nettie Norris, E. J. Norris, Ira Mannen and Lora Mannen, dated November 26, 1922, and due

one year after date. This note was not paid or renewed but the interest was paid on it for 1923 and 1924. Willis continued to hold it and asked G. O. Norris at different times to pay it, but meeting with no success went to E. J. Norris, the surety, and told him it would have to be settled. Norris said he had no money but would do anything to fix it up, and after some negotiation the matter was settled by the sale of the 320 acres. The deed was made to Mrs. Willis because Willis had sold in 1919, before the loan was made and the first note given, land given to her by her father, and the purchase money, $10,400, had been deposited to his credit in Willis' bank account, on which the check which he gave for the money lent was drawn. The deed was executed on December 31, 1925, but was dated back to November 26, 1925, the date when the annual interest was due, and a credit was indorsed on the note, "November 26th, 1925, paid $10,000."

The evidence gives rise to no suspicion in regard to the actual existence of a debt based upon a valid and sufficient consideration to the full amount of the note to Willis or in regard to the good faith of his effort to collect the debt. Neither he nor his wife, so far as the evidence shows, had any knowledge of E. J. Norris' financial condition or that he was largely in debt. Willis testified that it was general talk that Gus owed quite a bit, but Willis did not know that his father was on his notes or surety for him at the Third National Bank or on any of his debts which are mentioned in the evidence. He did not know that E. J. Norris owed other people, and Norris never told him that he did. Mrs. Willis testified that she never heard a word about her uncle or his son being financially involved and she knew nothing of it, and there is nothing to show that either of them did know anything of it.

The conveyance was a preference of the $10,000 debt over E. J. Norris' other debts, but a debtor has a right to prefer one creditor, when he acts without fraud, even though

he devotes all his property to the preferred creditor, leaving nothing for his other creditors to resort to. There must be evidence to show a fraudulent intent before a conveyance made upon a valuable consideration may be held fraudulent. (*Tomlinson* v. *Matthews*, 98 Ill. 178; *Hughes* v. *Noyes*, 171 id. 575; *Earl* v. *Earl*, 186 id. 370; *Nelson & Co.* v. *Leiter*, 190 id. 414.) The testimony in regard to the value of the land was conflicting. The witnesses for the appellees testified generally that in their opinion the land was worth $50 or $55 an acre, while an equal or greater number for the appellants fixed the value in their opinions at $30 or $35. There was clearly no such inadequacy of consideration as to justify a finding of fraud from that circumstance alone. On January 2, 1926, E. J. and G. O. Norris were at the bank in Mt. Vernon in response to a request of the assistant cashier, and in their conversation E. J. Norris made a statement in regard to the property he owned, among other things saying that he owned 410 acres of land worth $50 an acre, which included the 320 acres which he had a few days before conveyed to Mrs. Willis. He was asked to give a mortgage on his land but declined to do so, saying that would not be fair to his other children. The deed had not then been recorded and Norris did not mention the fact that it had been executed. It was recorded on January 5, and a few days after the bank took judgment on its notes. Norris' statement of his ownership of the land out of the presence and without the knowledge of Mrs. Willis cannot affect her title previously acquired through his deed.

At the time the deed was made the following written contract was executed by the grantor and grantee:

"This agreement, made and entered into this 26th day of November A. D. 1925, by and between Myrtle E. Willis, party of the first part, and Edward J. Norris, party of the second part, witnesseth:

"That the party of the first part hereby agrees and covenants to convey to the party of the second part by good and sufficient

warranty deed the real estate herein described, viz.: The southwest fourth of the northwest quarter, and the northwest fourth of the southwest quarter, in section thirty-six (36); and the south half of the southwest quarter of section thirty-five (35); and the southeast quarter of section thirty-four (34), all in town three (3) south, range one east of the third principal meridian, situate in the county of Jefferson, in the State of Illinois. Provided, and on condition the party of the second part shall pay or cause to be paid to the party of the first part, as purchase money for said real estate the sum of ten thousand ($10,000) dollars, payable as follows, viz:

"The amount hereinabove mentioned as the amount to be paid by the party of the second part shall be paid within one year from the date hereof, with interest at the rate of 7 percentum per annum, payable annually, on the whole sum remaining from time to time unpaid, and on the further condition the party of the second part shall pay, when due, such taxes, special taxes and assessments as may be levied against said real estate subsequent to and payable hereafter. Should the party of the second part fail to make the payments herein provided for, either of purchase money or taxes, or fail to perform any of the covenants hereof, the party of the first party may declare this contract forfeited, in which event the party of the second part shall forfeit such payments as may have been made on account hereof, and such payments shall be retained by the party of the first part in full satisfaction and in liquidation of all damages by.......sustained, and she shall have the right to re-enter and take possession of said real estate, with or without legal process, and with or without notice to the party of the second part.

"The party of the second part further covenants and agrees that he will at once have such buildings, if any, as may be now or hereafter upon said real estate, insured against loss by fire, to their reasonable insurable value, policies to be issued in the name of and deposited with the party of the first part, but loss to be made payable to both parties hereto according to their respective interests at time of loss.

"Time of payment shall be of the essence of this contract, and the covenants and agreements herein contained shall be binding upon the heirs, assigns and other legal representatives of the respective parties.

"In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written.

MYRTLE E. WILLIS, (Seal.)<br>EDWARD J. NORRIS. (Seal.)"

This contract was not recorded.

The appellees contend that the only question necessary for determination is whether the appellants, Myrtle E. and Arthur E. Willis, are *bona fide* purchasers of the premises for a fair and adequate consideration, or are claiming under a deed not intended as an absolute conveyance but as security and made for the purpose of preventing other creditors from reaching the secret equity of E. J. Norris. They contend that the preponderance of the evidence shows that the deed was not an absolute conveyance but was intended as security and was put in its present form for the purpose of deceiving, hindering, delaying and defrauding the other creditors of Norris. If the deed, with the agreement to reconvey, did constitute a mortgage the transaction was evidence of a fraudulent intent. (*Beidler* v. *Crane,* 135 Ill. 92.) A grantee who has notice of the grantor's fraudulent intent to defeat the claims of creditors in making the conveyance is regarded as participating in the fraud even though he paid some consideration for the conveyance, and an attempt by a grantee to defeat the claims of the grantor's creditors by setting up as an absolute conveyance a deed absolute in form but in fact intended merely as a mortgage will ordinarily be regarded as a fraud and will prevent the grantee from claiming to be a *bona fide* mortgagee. (*Clark* v. *Harper,* 215 Ill. 24.) Before a deed absolute on its face can be held to be a mortgage it must be clearly shown that it was, in fact, intended as a mortgage, a mere security for the payment of money or the performance of some other obligation. The existence of a debt or obligation of the grantor to the grantee is essential to the existence of a mortgage. Nothing of the kind appears here. The consideration for the land was shown to be $10,000, and it was paid by the credit of that amount on the note. That was the end of the transaction and there is nothing to contradict it. A sale with the mere privilege in the vendor to re-purchase, where the vendor does not undertake to re-

purchase and assumes no obligation to pay the purchase money, is not a mortgage. If such a transaction is used as a device for enabling the grantor to retain a secret interest in the land for the purpose of defrauding his creditors the whole transaction is fraudulent and the deed may be set aside at the suit of the creditors, but the fact that the transaction is such a device must be proved. Mere suspicion, arising out of the fact that the transaction is between near relatives, is not enough to set aside the conveyance. There must be facts tending to show the fraudulent purpose to deceive and hinder creditors. The evidence in such cases is usually circumstantial, and such is the evidence relied on here; that the grantor was hopelessly insolvent; that he was being pressed for payment; that he had made a deed of other lands to his daughter; that he and the grantee, his niece, were very intimate and had discussed his inability to pay his debt to her; that two days after the execution and delivery of the deed the grantor stated that he was still the owner of the land, that it was worth $16,000 and was not incumbered; that the deed was ante-dated and the contract for a re-conveyance was made but was not recorded; that the grantee claimed in her answer and contended on the hearing that the instrument was a deed absolute and not a mortgage, and testified, "We used our own judgment about how to secure the loan." On the other hand, the evidence shows that E. J. Norris was a man seventy-two years old, who had lived in the same neighborhood all his life. He had many relatives and some property, owning 586 acres of land which was clear of incumbrance, except his homestead in 40 acres and a mortgage of $5000 on 226 acres, which had been conveyed to him by his son, G. O. Norris, as security for his endorsement of his son's notes. He testified that the land was worth $50 an acre, which would be somewhat less than $30,000, making his equity in the whole land to be about $25,000. He was surety for his son to the amount of

$35,000 or $40,000, but his son was the owner of several thousand dollars worth of property. Although the facts would indicate that E. J. Norris was insolvent he still had good credit. He owed no debts of his own of any considerable amount. Charles McAtee, who was in the mercantile business with a partner and was vice-president of the bank, and whose firm had Norris' note for $1000, which it had carried for seven or eight years, told him the firm did not care when he paid it so he kept the interest paid. C. R. Keller, the assistant cashier of the bank, who had charge of the collection, testified that after the conversation of January 2, 1926, "we threatened to sue them, [that is, E. J. Norris and his son,] told them we would take judgment, but when he said he owned 410 acres we felt satisfied."

When the whole evidence is considered it does not justify any charge of bad faith against the appellants, Myrtle E. and Arthur E. Willis. The evidence shows, without contradiction, a debt to the full amount of the consideration of the deed existing for many years, upon which interest had been paid, and requests for payment which E. J. Norris was unable to comply with for lack of money. His indebtedness on his son's notes he knew would not permit him to borrow the money, though there is no evidence that he ever told Mr. or Mrs. Willis that he was indebted otherwise than to them. Their testimony that they did not know he was in debt is uncontradicted and is not inherently improbable. It cannot be disregarded. The amount at which they took the land was a reasonably adequate value for it. Land was not selling freely. Opinions as to its value differed, and it is no evidence of fraud that in accepting the land for the debt they were unwilling to take it at the highest value that any witness for the appellees testified to. Much stress is laid on the fact that the appellants gave their grantor the written option to re-purchase the property within a year at the same price at which they had taken it, with interest. The appellants, however, did

not want the land. They wanted to collect their debt, and being unable to collect it in money they accepted the land. It is no evidence of fraudulent intention or a desire for concealment that they did not record the contract or option to re-purchase . There was no reason why they should want the contract recorded. It was not necessary to the protection of their title, and as far as they were concerned there was no occasion to cumber the record with it. There could be no intent on their part to defraud other creditors of their grantor, for they had no knowledge that there were any other creditors. The statement of Mrs. Willis, on cross-examination, that they used their own judgment about how to secure the loan was no indication that the deed was, in fact, a mortgage or was intended to operate as a mortgage. The form of the expression is appropriate to describe the taking of a mortgage for a loan, but it was equally appropriate to the collection of the loan. To secure is "to make safe," "to put beyond the hazard of losing or of not receiving, as to secure a debt by a mortgage," and it also means, "to get safely in possession," "to obtain," "to acquire certainly, as to secure an inheritance or a prize."

The evidence does not justify the conclusion that the transaction between E. J. Norris and Mr. and Mrs. Willis was other than a sale of the land in payment of a debt, or that the option for a re-purchase was a device for securing to Norris a secret interest in the land for the purpose of deceiving, hindering or delaying his creditors.

The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*