(No. 19917.

F͏͏ERRIS E. G͏͏AINES, Receiver, Appellant, *vs.* H͏͏ENRY E. K͏͏RACKE, Appellee.

*Opinion filed February 21, 1930.*

S͏͏NAPP, H͏͏EISE & S͏͏NAPP, for appellant.

D͏͏IBELL, L͏͏AGGER & B͏͏LATT, for appellee.

Mr. J͏͏USTICE H͏͏EARD delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Will county dismissing for want of equity a bill filed by appellant to set aside a deed dated August 5, 1904, purporting to convey certain real estate in Will county therein described, from Henry Kracke to appellee, Henry E. Kracke, and praying for an injunction restraining appellee from conveying or encumbering the property.

The bill alleged, among other things, the making of the deed on August 5, 1904; that the deed was not delivered to the grantee until December 23, 1919, on which date it was recorded in the office of the recorder of deeds of Will county; that the grantor retained the possession of the premises, continued to pay the taxes thereon and exercise all the rights of ownership in the same, and remained, in fact, the owner thereof; that on the date when the deed was delivered to Henry E. Kracke and recorded by him, the grantor, Henry Kracke, was, and had been for many years, a director and the owner of a large number of shares of stock in the Illinois State Bank of Crete, and that on said date said bank was insolvent and its affairs were in the hands of a receiver appointed by the circuit court; that the deed was delivered by Henry Kracke and accepted by Henry E. Kracke without consideration and solely for the wrongful and fraudulent purpose of defeating the then existing right of the creditors of the bank to recover from Henry Kracke certain large sums of money as damages suffered by reason of his negligence as a director, to prevent the enforcement against Henry Kracke of his then existing statutory liability as a stockholder, and to prevent the collection by the creditors of the bank of its just demands against Henry Kracke when judicially ascertained and determined; that the receiver of the bank after it became insolvent filed his bill in chancery in the circuit court against Henry Kracke for an accounting of the loss and damage sustained by the bank by reason of his negligence and recovered a decree finding Kracke liable to the receiver for an amount in excess of $300,000, which amount remains unpaid; that Kracke died on January 1, 1922, insolvent and leaving no estate except this and other real estate also fraudulently conveyed, all of which is insufficient to satisfy the complainant's demand. Appellee answered the bill, denying that the receiver was entitled to any relief and alleged that the deed was delivered for a valuable consideration on the day on

which it bears date, and that he immediately entered into possession of the premises and that they have been in his exclusive possession thenceforth. The answer denies the insolvency of Henry Kracke at the time of the delivery of the deed and alleges the Illinois State Bank of Crete was not in existence at that time.

Appellant claims that the deed was intended as a testamentary disposition of the property. He introduced as a witness the scrivener who drew the deed, who testified that the grantor said he wanted the deed made so that his property would be divided as he wanted it, in case of his death. Appellee was not present when this statement was alleged to have been made and it has no evidentiary effect as against him. *Third Nat. Bank* v. *Norris,* 331 Ill. 230; *Dausch* v. *Barker,* 329 id. 410.

Appellant introduced much evidence as to acts of ownership by Henry Kracke, the grantor, over the property, consisting of payment of taxes, procuring insurance on the buildings on the premises, making leases, collecting and receipting for rent, making repairs, and statements made by him with reference to the premises. On the other hand, appellee and two of his brothers testified that the deed was delivered August 5, 1904; that appellee put it in a locked tin safety box and later in a steel safe and there retained it until its recording; that the grantor had access to neither box nor safe, and that at no time did he have access to or possession of the deed after August 5, 1904; that appellee immediately went into possession of the property under his deed and has retained the possession, in person or by tenant, since that time; that he paid all taxes, insurance and repairs on the premises; that at times his father acted as his agent in the premises; that he had worked for his father for eight years after coming of age without wages; that in 1902 he complained to his father, who told him to "wait a few years longer and I will give you a deed to your farm;" that at the time of the

delivery of the deed to appellee his father said, "Here is the pay for the work which you did;" that at that time his father was not insolvent nor was he indebted to anyone; that the grantor retained the home farm of 160 acres, which, with the improvements and other property, was worth in excess of $40,000. Appellee testified that the reason he did not have the deed recorded was that he did not know it was necessary until in December, 1919, when he was informed that he had to have it recorded before he could go on a bail bond for his brother; that at the time he had it recorded he did not know his father was insolvent or that he was indebted to the Illinois State Bank of Crete or its creditors.

It is in evidence that in this court at the February, 1924, term, in Ohlendorff, Receiver of the Illinois State Bank of Crete *vs.* Rathje, No. 15815, in which suit Henry Kracke was one of the original defendants and in which suit it was sought to hold him and the other directors liable by reason of their negligence, the same counsel who are now appearing for the present receiver, and who were then representing the then receiver, filed a brief and argument in which they said, with reference to the present transaction: "It is the custom among German farmers in the neighborhood where Henry Kracke resided, after they reach that time of life when they are no longer able to take an active part in the work on the farm, to turn their farms over to their sons and retire. In such cases they quite frequently divide their lands and convey by deed to their children. Some years before the bank failed Henry Kracke did this. His confidence in his children was such that he was willing to divest himself of the greater part of his property for what he believed to be the best interests of his children. As Henry Kracke was one of the largest investors in the bank's securities and one of its big depositors for some time after he made the conveyance to his children, the receiver doubted, and still doubts, the result of a proceeding

to compel the children to return to him property conveyed to them before the obligation of the father was established and under circumstances which make it plain that the conveyance was not made for the purpose of defrauding creditors." The record does not show what final disposition was made as to cause No. 15815 or that any monetary liability was ever finally adjudged against Henry Kracke or his estate.

It was the duty of the chancellor to weigh the testimony of the several witnesses, taking into consideration all the circumstances shown by the evidence. If, after doing so, he believed the testimony of appellee and his brothers to be true, he could not do otherwise than sustain the deed and dismiss the bill for want of equity. The question involved in the case was purely one of fact. The chancellor saw and heard the witnesses, observed their appearance and demeanor on the witness stand, and was in a better position to determine the weight to be given to their testimony than we are. He found in the decree: "There is no proof in the record that indicates that this transaction was fraudulent, the deeds having been given years before Henry Kracke became a stockholder and director of the Crete bank, and, furthermore, at the time the deeds were executed and delivered he had no creditors and still retained property valued at about $40,000." Before we would be authorized to reverse the decree on the ground that it was not supported by the evidence we must be able to say that it was palpably contrary to the weight of the evidence. (*Moore* v. *Moore*, 335 Ill. 517.) After a careful examination of the evidence in the case we are unable to say that the findings and decree of the chancellor are so palpably against the weight of the evidence as to justify a reversal of the decree.

The decree of the circuit court is affirmed.

*Decree affirmed.*