(No. 21144.— )

H. P. HURT, Appellant, *vs.* JAMES OHLMAN.—(ALEXANDER M. OHLMAN, Appellee.)

*Opinion filed June 24, 1932.*

J. D. WILSON, and COBBS & LOGAN, for appellant.

HILL & BULLINGTON, and HARRY C. MILLER, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

In January, 1927, a writ of attachment against James Ohlman was sued out of the circuit court of Montgomery county by appellant, H. P. Hurt. The writ was levied on an undivided one-fifth interest in 660 acres of real estate in that county. Appellee, Alexander M. Ohlman, appeared and filed a plea of interpleader, by which he alleged that he was the owner of the property levied on. On the issue made on appellee's plea as to the ownership of the property levied on, a trial was had before the court without a jury. The court found that appellee was the owner of the property and entered judgment in his favor and against appellant for costs. This appeal is prosecuted from that judgment.

James Ohlman is a resident of the State of Missouri, and appellee, his brother, is a resident of Montgomery county, Illinois. In September, 1924, appellant and Ohlman entered into a contract by which appellant agreed to sell, and Ohlman agreed to buy, certain real estate owned by appellant in the State of Mississippi. In 1926 appellant recovered a judgment in the District Court of the United States for the Eastern District of Missouri against Ohlman for $14,000 as damages for the breach of that contract. An execution issued on that judgment was returned not satisfied. At the time the contract was made and at the time the judgment was obtained, Ohlman, as heir of his father, Michael Ohlman, was the owner of an undivided one-sixth interest in 820 acres of real estate in Montgomery county. On March 12, 1924, he executed to appellee a mortgage on his interest in the real estate to secure the payment of a note for $5900, due March 24, 1925. This mortgage was recorded May 12, 1924. Thereafter all the heirs of Michael Ohlman,

deceased, excepting his daughter, Mrs. Marley, conveyed their undivided five-sixths interest in a 160-acre tract of said lands to Mrs. Marley, and she then conveyed to the aforesaid heirs all her interest in the remaining 660 acres. In August, 1924, the mortgage from Ohlman to appellee was released as to 160 acres of the 820 acres, but the evidence does not show whether or not that 160 acres was the land that had been conveyed to Mrs. Marley. By a warranty deed acknowledged January 5, 1925, Ohlman and wife conveyed to appellee his one-fifth interest in the 660 acres of real estate. This deed was filed for record on January 10, 1925. The consideration for the conveyance named in the deed was $10,000. The affidavit for attachment was filed and the attachment writ issued on January 5, 1927. The levy of the attachment writ was made on January 6, 1927, on the one-fifth interest in the 660 acres of land that had been by Ohlman and wife conveyed to appellee. On January 26, 1927, appellant filed his declaration against Ohlman and attached thereto a copy of the judgment obtained in the District Court of the United States and his affidavit that there was due to him from Ohlman on the judgment the sum of $14,595.60. The interpleader plea of appellee was filed on January 31, 1927. It was verified by the affidavit of appellee. A motion was made by appellant to strike the plea from the files because it was not accompanied by an affidavit of merits, as required by section 55 of the Practice act. This motion was overruled. Replications to the plea were filed by appellant, and after a rejoinder and surrejoinder had been filed issue was joined.

It is first contended by appellant that the court erred in overruling his motion to strike the plea of interpleader from the files because it was not accompanied by an affidavit of merits, as required by section 55 of the Practice act. The plea of interpleader filed by appellee was filed in accordance with the provisions of section 29 of the Attachment act, which provides that in all cases of attachment

any person other than the defendant claiming the property attached may interplead, verifying his plea by affidavit, and the court shall immediately direct a jury to be impaneled to inquire into the right of property. Section 55 of the Practice act provides that if a plaintiff in any suit upon a contract for the payment of money shall file with his declaration an affidavit showing the nature of his demand and the amount due him from the defendant after allowing all just credits, deductions and set-offs, such plaintiff shall be entitled to judgment as in case of default, unless the defendant shall file with his plea an affidavit stating that he verily believes he has a good defense to the suit upon the merits to the whole or a portion of the plaintiff's demand and specifying the nature of such defense. That the provisions of section 55 have no application to a plea of interpleader filed under section 29 of the Attachment act is apparent. Section 55 of the Practice act requires in certain cases an affidavit of merits, with a plea filed by the defendant named in the declaration, and the affidavit must state that the defendant has a defense upon the merits to the whole or a part of the plaintiff's demand. Section 29 of the Attachment act provides that a plea of interpleader may be filed by any person other than the defendant in the attachment suit. Since the person who may file a plea of interpleader under the Attachment act is someone other than the defendant to the plaintiff's suit and is not a person against whom plaintiff claims a right of recovery, and the purpose of a plea of interpleader is not to state a defense to the right of action stated in the declaration of the plaintiff, the provisions of section 55 of the Practice act requiring in certain cases an affidavit of merits to be filed with a plea of the defendant can have no application to a plea of interpleader filed under the Attachment act. Appellee's plea of interpleader was properly verified, and the court did not err in overruling the motion to strike it from the files.

Appellant also contends that the evidence shows that the deed from James Ohlman to appellee was executed to defraud, hinder and delay his creditors and should have been found to be void and of no force and effect so far as the rights of appellant are concerned. The evidence for appellant was the testimony of himself and of J. L. Dunlap taken by deposition, and the testimony of a court reporter, Floyd A. Buchanan, as to evidence given by James Ohlman at a hearing in the District Court of the United States in St. Louis, Missouri, in 1928, and certain documentary evidence. Appellee objected to the testimony taken by deposition, and also to the testimony of Buchanan on the ground of its incompetency and immateriality, but it was admitted and heard subject to the objection.

· J. L. Dunlap acted as agent for appellant in the negotiations leading up to the execution of the contract of September 29, 1924, between appellant and James Ohlman. By that contract Ohlman agreed to buy appellant's land in Mississippi, known as the Wildwood plantation, for $74,400, and to pay therefor by assuming a first mortgage thereon for $46,000, paying $5000 in cash, executing a note for $5000 due in one year, secured by a second mortgage on the land, and conveying to appellant 1600 acres of land located in Madison parish, Louisiana, valued at $18,400.

Appellant's testimony is in substance as follows: He met James Ohlman and W. J. Gayden several times before the contract was executed. Ohlman was living at a hotel in Greenwood, Mississippi, and said that he was managing a farm that he and appellee owned in LeFlore county, Mississippi, but that he and appellee did not want to dispose of any of their land in Mississippi. Gayden told witness that Ohlman and appellee owned a great deal of property, and that the town of Ohlman, Illinois, was located on property that they owned. Ohlman stated that he owned the land in Louisiana that was to be conveyed as part payment for the Wildwood plantation. He left the impression on

witness that he and appellee were partners and would be partners in the Wildwood plantation. Dunlap showed Ohlman the Wildwood plantation and went to Louisiana to inspect the property that was to be conveyed to appellant by the terms of the contract. Dunlap was furnished by the sheriff and the tax collector of Madison parish, Louisiana, with information concerning the ownership of the Louisiana land. After the contract was signed Ohlman took possession of the Wildwood plantation, but later abandoned it and did not carry out the contract.

Attached to appellant's deposition as exhibits were a copy of the contract between him and James Ohlman, and a statement of the sheriff and the tax collector of Madison parish, Louisiana, showing the description of 647.88 acres of land in that parish assessed in the name of appellee. This last exhibit is undated and shows taxes on the land for 1926 "delinquent July 1st, '27, $172.89."

The testimony of J. L. Dunlap contained in his deposition relates to the negotiations leading up to the execution of the contract between appellant and James Ohlman, and is in substance the same as the testimony of appellant.

Floyd A. Buchanan testified that as a court reporter he took the testimony of James Ohlman in the case of H. P. Hurt against Ohlman in the Federal court in St. Louis on March 15, 1928. He then read from his shorthand notes the testimony given by Ohlman, and that testimony is in substance as follows: When he entered into the contract with appellant he did not own land in LeFlore county, Mississippi, and did not own 1600 acres of land in Madison parish, Louisiana. The 1600 acres of land in Louisiana was owned by W. J. Gayden. Witness had the right to sell that land. Gayden was not agent for witness or for appellee. Witness was never in partnership with appellee and was not in partnership with Gayden. The only interest witness had in lands in Mississippi or Louisiana was under verbal contracts. He conveyed his interest in the

lands owned by his father at his death to appellee. At the time the conveyance was made appellee paid him nothing, but the conveyance was made to pay to appellee money that witness owed appellee. At the time of the conveyance he owed appellee several hundred dollars more than the $10,000 which was named in the deed as the consideration for the conveyance. He received no canceled evidence of indebtedness from appellee at the time of the conveyance.

Appellee testified that the conveyance to him of the one-fifth interest of James Ohlman in the 660 acres of land was made as payment of $10,000 that Ohlman at the time the deed was executed owed to him. He introduced in evidence the note and mortgage for $5900 executed by Ohlman to him on March 12, 1924, and twenty-two drafts on him by Ohlman drawn at Greenwood, Mississippi, at various dates from April 11, 1924, to December 22, 1924, for $100 each, and which he had paid. He also produced and introduced in evidence two canceled checks drawn by him, one dated May 15, 1924, for $70, payable to the M. A. Rust & Son Real Estate Company, and the other dated October 28, 1924, payable to William J. Gayden for $2000, and testified that the amounts of the checks represented loans made by him to Ohlman. He stated that the money loaned by him to Ohlman, as shown by the note and mortgage and the drafts and checks, made up the indebtedness for payment of which the deed was executed to him. He stated that Ohlman was not his agent to sell the land that he owned in LeFlore county, Mississippi, and in Louisiana; that the 1600 acres of land in Louisiana described in the contract between appellant and Ohlman was not witness' land; that he never paid Ohlman any commission for selling land in Mississippi and Louisiana and never paid his expenses while in Mississippi for the purpose of selling land; that in 1924 he did have land in Mississippi and Louisiana for sale and had Gayden "look after" selling it, and that he did not know prior to the execution of the deed from

Ohlman to him in January, 1925, that Ohlman was having trouble over his contract with appellant.

It is well established by the decisions of this court that a debtor may prefer one creditor over others when he acts without fraud, even though he transfers all of his property to the preferred creditor. (*Third Nat. Bank* v. *Norris,* 331 Ill. 230; *Schroeder* v. *Walsh,* 120 id. 403.) Mere suspicion arising out of the fact that the parties to the transaction are close relatives is not enough to set aside the conveyance in the absence of proof of fraud, although the fact of relationship may be considered in connection with other evidence tending to impeach the transaction. (*Third Nat. Bank* v. *Norris, supra; Bartel* v. *Zimmerman,* 293 Ill. 154.) Circumstances shown by the evidence from which a conclusion that the transaction was fraudulent might be drawn may be overcome by evidence establishing the good faith of the transaction. *Zwick* v. *Catavenis,* 331 Ill. 240.

Appellant argues that the circumstances established by the evidence in this case show that the deed was executed to defraud, hinder and delay the creditors of James Ohlman because it shows that Ohlman and appellee are brothers; that Ohlman was insolvent at the time the deed was executed and appellee must have known that fact; that the indebtedness of Ohlman to appellee which is supposed to have been the consideration for the conveyance was not clearly established; that the evidence of this indebtedness was not surrendered to Ohlman when the deed was executed; that the deed was executed before the note secured by the mortgage on the land became due, and that the mortgage had been released as to 160 acres of the land covered by it before the deed was made.

There is no proof in the record in this case that the interest of James Ohlman in the 660 acres of land which he conveyed to appellee was worth any more than $10,000— the amount of consideration mentioned in the deed. The evidence of appellee was to the effect that at the time

of the conveyance Ohlman was indebted to him in a sum greater than $10,000, and he produced and introduced notes, drafts and checks which supported his evidence in that respect. The testimony of Ohlman taken in the Federal court in St. Louis in 1928 and introduced in evidence in this case by appellant also supports appellee's evidence in regard to this indebtedness. More than half of the $10,000 indebtedness was evidenced by note, secured by mortgage, which was executed in March, 1924, several months before the contract between appellant and Ohlman was made. The conveyance from Ohlman to appellee was made more than a year before appellant obtained his judgment against Ohlman in the Federal court. While the circumstances recited by appellant as showing that the conveyance was fraudulent may be sufficient to arouse some suspicion concerning the transaction, a consideration of all the evidence in the record leads us to the conclusion that the finding of the circuit court that the conveyance to appellee was made in good faith and was not fraudulent is not against the weight of the evidence in the record.

It is further contended by appellant that the circuit court erred in not entering judgment in his favor against James Ohlman. That question does not arise on this record. The appeal under consideration is prosecuted from the judgment entered on appellee's plea of interpleader. The court very properly entered judgment on the question of ownership of the property attached before proceeding with the case against Ohlman. (*Cermak* v. *Schaaf,* 308 Ill. 61; *Juilliard & Co.* v. *May,* 130 id. 87.) Furthermore, the record does not show that appellant asked the court to enter judgment in his favor against Ohlman.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*