## THE AMERICAN HOIST AND DERRICK COMPANY

*v.*

## WILLIAM E. HALL.

*Opinion filed April 20, 1904.*

. 1. FRAUD—*application of rule that one alleging fraud must prove it.* The fact that an alleged fraudulent transaction is between relatives does not change the rule that one alleging fraud in a creditor's bill must prove it by a preponderance, the relationship being merely a circumstance to excite suspicion.

2. EVIDENCE—*party voluntarily putting witness on the stand cannot impeach him.* A complainant who voluntarily puts the defendant upon the stand and makes him his own witness cannot impeach him, although he is not bound by the conclusions of the witness and may contradict him by other witnesses.

3. PRACTICE—*not error for court to refuse to hear testimony pending exceptions to master's report.* It is not error, in a chancery case, for the court to refuse to hear additional testimony pending the determination of exceptions to the master's report, there being nothing to bring the case within any exception to the general rule.

*American Hoist and Derrick Co.* v. *Hall,* 110 Ill. App. 463, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. P. VAIL, Judge, presiding.

HOYNE, O'CONNOR & HOYNE, for appellant.

JOHN W. SMITH, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On January 9, 1899, the appellant filed a creditor's bill to set aside certain conveyances of real estate made by Charles E. Hall to his son, William E. Hall, the appellee. The bill charges that the conveyances were made without any consideration, and for the purpose of hindering, delaying and defrauding the creditors of Charles E. Hall, and that the appellee, William E. Hall, holds the property in secret trust for the benefit of Charles E.

Hall. The bill made Charles E. Hall a party defendant, but he died during the pendency of the suit.

On October 20, 1898, the appellant recovered a judgment against Charles E. Hall in the circuit court of Cook county for $4453.56 and costs of suit upon three promissory notes dated September 15, 1897, signed by the Minnehaha Granite Company and guaranteed by Charles E. Hall and others. An execution was issued upon this judgment against Charles E. Hall, and on December 20, 1898, it was returned *nulla bona.* The property in controversy is situated in the city of Chicago, and is known as 3550 Vernon avenue, 7143 South Chicago avenue, 8457-8459 Ontario avenue and 5235 Wabash avenue. The deed conveying the Vernon avenue property is dated July 21, 1897, and purports to have been acknowledged upon the same day and filed for record September 28, 1897. It recites a consideration of $7000, and warrants the premises to be free and clear of encumbrance. The deeds conveying the other pieces of property are all dated September 28, 1897, and purport to have been acknowledged upon the same day and filed for record October 1, 1897. The deed conveying the South Chicago avenue lot recites a consideration of $2000, subject to an encumbrance of $600. The deed conveying the Ontario avenue lot recites a consideration of $2000, and the deed for the Wabash avenue lot recites a consideration of $1000 and states that the property is subject to an encumbrance of $3000.

The cause being at issue was referred to a master in chancery, who made his report recommending that the bill be dismissed for want of equity. Exceptions were filed to this report and were overruled by the chancellor and the bill dismissed at complainant's cost. An appeal was prayed to the Appellate Court, where the order of the circuit court was affirmed, and a further appeal has been prosecuted to this court.

There are two questions raised upon this appeal. It is first insisted by appellant that the evidence sustains

the allegations of the bill, and that the chancellor erred in dismissing it.   Upon the trial before the master the appellee, William E. Hall, was placed upon the stand by appellant, and he gave the principal testimony appearing in the record.   He testified that all of the properties in controversy had been in the name of his father, Charles E. Hall, for a great many years before they were conveyed to him; that the father, though holding the title, had no interest whatever in the Vernon avenue property, but it belonged to him, (the witness,) and at the time of the conveyance was occupied by him as a homestead and had been so occupied for several years. He also testified that he had for many years owned a half interest in all of the other pieces of property, and they were purchased by himself and his father on their joint account, each owning a half interest; that the title to all the properties was taken in his father's name because, witness being a physician, he feared blackmailing suits might be brought against him for malpractice; that by the deeds of conveyance in controversy he acquired from his father only the other half interest in the properties, other than the Vernon place, and that his father's half interest in the properties was conveyed to him in part payment of a large indebtedness which his father owed him for money loaned, from time to time, during many past years, and to help his father pay his share of the purchase price of the same, and for improvements, repairs and taxes on the property.   He further testified that prior to January, 1895, he carried a small pocket memorandum book in which he entered the amounts advanced by him to his father, but had lost it, and at the time of the loss it showed the balance which his father owed him to be $7280; that on the third day of January, 1895, his father called at his office and he then informed his father of the balance due him; that thereupon his father took from his pocket a small memorandum book in which he kept account of the sums received

by him from the witness, and after looking it over said the balance of $7280 was correct, and that thereupon he (the witness) directed his book-keeper to enter this balance in his office ledger, and he himself entered it in a small memorandum book in which he afterwards kept his account of all sums advanced by him to his father after that date. He also testified that he loaned his father a considerable amount of money to invest in the Minnehaha Granite Company, and after the investment was made lost confidence in the company, and in December, 1895, went to his father and demanded from him a deed to the Vernon avenue property and a settlement of all accounts against his father, but they came to no definite understanding at that time, except that the father promised to convey the Vernon avenue property to him; that in the following March he called upon his father a second time and demanded a settlement, and in July thereafter both he and his father went to the office of Elisha Whittlesey, Jr., his attorney, and there went over their accounts, and then and there agreed that the father was indebted to him in the sum of $9862, and that the father should convey to him his one-half interest in all of the properties in part payment of that amount and should execute a deed to him for the Vernon avenue property, and that in pursuance of that agreement the deeds in controversy were executed for such *prima facie* indebtedness existing between them. Outside of this testimony there was very little, if any, direct evidence offered by appellant tending to sustain the allegations of its bill.

It is claimed, however, that such testimony is uncertain, contradictory and suspicious, and a great deal of the briefs and arguments of counsel for appellant is devoted to pointing out such uncertainties and contradictions. If this evidence should be treated unworthy of belief and of no weight or credit whatever, it would be of no avail to the appellant, because in that event it

would be left without proof to sustain the allegations of
the bill.   All transactions are presumed to be fair and
honest until the contrary is proven.   Appellant having
alleged fraud, the burden was upon it to prove that alle-
gation by a preponderance of the evidence. (*Schroeder* v.
*Walsh*, 120 Ill. 403; *O'Neal* v. *Boone*, 82 id. 589; *Bear* v. *Bear*,
145 id. 21; *Merchants' Nat. Bank* v. *Lyon*, 185 id. 343.)   The
fact that the alleged fraudulent transaction occurs be-
tween relatives will not change the rule as to the burden
of proof, the relationship being merely a circumstance
which may excite suspicion, but will not of itself amount
to proof of fraud.  (*Wightman* v. *Hart*, 37 Ill. 123; *Schroeder*
v. *Walsh*, *supra; Merchants' Nat. Bank* v. *Lyon, supra.*)  Ap-
pellant voluntarily put appellee upon the witness stand
and made him its own witness, thereby vouching for his
credibility, and while it is true it was not bound by his
conclusions and might contradict him by other witnesses,
yet it could not impeach him. (*Mitchell* v. *Sawyer*, 115 Ill.
650; *Bowman* v. *Ash*, 143 id. 649; 1 Greenleaf on Evidence,
sec. 442.)   The fact that no note or receipts were passed
between the parties at the time of the alleged settle-
ment, and that the title was first placed by appellee in
his father for an improper purpose, to avoid blackmail,
and that tax receipts and entries in books may have
been altered after the death of the father and prior to the
hearing of this cause, would only tend to cast suspicion
upon the testimony of its own witness, and clearly would
not amount to proof that the conveyance sought to be
impeached was made without consideration, and for the
purpose of hindering, delaying and defrauding the cred-
itors of Charles E. Hall.  But in addition to this, we find,
upon an examination of the record, that appellee was
corroborated in his testimony as to the main facts by
other witnesses.  One witness testified that he was pres-
ent at the time of the settlement between appellee and
his father, and that he went over their accounts with
them and aided them in arriving at the balance due.  An-

other testified that she was present on many occasions and saw various sums of money paid by appellee to his father. Another testified to many acts of ownership exercised by the appellee over the different pieces of property here in controversy long before the conveyances were made, such as letting contracts for painting, papering, plumbing and repairs, which were paid for by appellee; and still another witness testified that appellee placed one of these pieces of property in his hands for sale before the transfer by his father to him. The evidence also shows that the conveyances were made only about two weeks after the notes were given upon which complainant obtained its judgment and more than a year prior to the entry of that judgment. From all the facts and circumstances in evidence in the case we are unable to see upon what theory the allegations of the bill could have been sustained.

It is further insisted, on behalf of appellant, that the court below erred in refusing to admit the testimony of a witness named Waixel at the hearing on the master's report. The cause had been referred to the master and he had taken the evidence and reported the same, together with his conclusions of law and fact. Exceptions had been filed to that report, and while they were under consideration by the chancellor the testimony of the witness was offered. We have held that, as a general rule, it is error for the court, under such circumstances, to hear evidence not considered by the master. (*Smith* v. *Billings,* 170 Ill. 543; *Brueggestradt* v. *Ludwig,* 184 id. 24.) There is nothing in this record to bring the case within any exception to the rule.

We are of the opinion that the decree of the circuit court dismissing the bill was clearly in conformity with the law and evidence produced upon the hearing, and that the Appellate Court properly affirmed the same.

*Decree affirmed.*