Johnston City State Bank of Johnston City, Appellee, v. J. R. Sowell et al., Defendants. Dora G. Peterson, Appellant.

Opinion filed September 6, 1934.

GEORGE W. PILLOW, G. GLENN PILLOW and DAVID A. WARFORD, for appellant.

DENISON & SPILLER, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

In 1917, J. R. Sowell and Susie Sowell, his wife, became the owners, as tenants in common in equal parts, of a brick dwelling house and lot in Johnston City, which they afterwards occupied as their home. Appellant, Dora G. Peterson, and Lon Peterson, her husband, parents of Susie Sowell, resided in Florida, but would spend the summer months at the Sowell home, where they had a room fitted for their occupancy.

On July 18, 1930, the Sowells borrowed from appellee, Johnston City State Bank, the sum of $2,980, for which they gave their joint judgment note, due on demand. Appellee, at various times thereafter, requested payment of this obligation, which, however, was permitted to run along until the spring of 1932, when appellee began to insist upon its satisfaction, and was informed by Sowell that he would fix it up. On June 30, 1932, Wm. Huck, the cashier of appellee, called Sowell to the bank, demanded that the debt be taken care of, and Sowell replied: ''It's been worrying me; I've got to do something about it; we want to fix it up some way.''

The very next day the Sowells conveyed the property to appellant, Dora G. Peterson, for a stated consideration of $10 and other valuable considerations. The deed was filed for record on the same day, and the following day the fact of its execution and recording was accidentally discovered by Huck. On July 5, 1932, the note was placed in judgment by confession; execution was issued and returned unsatisfied. On July 28, 1932, this suit was instituted to set aside the deed as in fraud of appellee's rights, and as an obstruction to the levy of execution on said judgment.

It appears, at the time the note was executed, that the house and lot were worth $5,000, and that the loan was made upon the faith that the Sowells owned the property unincumbered. The place had depreciated

in value, and on July 1, 1932, was worth only about $2,500. The conveyance on the last mentioned date left the Sowells insolvent and with no property except some chattels of little value. They continued to occupy the dwelling the same as they previously had done, without payment of rent, while the Petersons followed their custom of occupying a single room therein during the summer months.

Appellee's position is that the transfer was voluntary and without consideration, for the purpose of placing the property beyond the reach of the Sowells' creditors; while appellant contends that it was in satisfaction of a debt which Sowell owed her, growing out of the fact that in 1925 she paid a debt at appellee's, evidenced by a note of something over $4,000, signed by J. R. Sowell, and with Mrs. Peterson's husband as surety thereon.

The cause was referred to the master in chancery, who took the proofs and reported in favor of appellee. The chancellor overruled appellant's exceptions to the report, and rendered a decree setting the deed aside as fraudulent, from which appellant has perfected this appeal.

After closing the proofs before the master, and prior to the rendition of his report, appellant moved to open the case and for leave to introduce newly discovered evidence, to the effect that prior to July 18, 1930, Sowell owed appellee divers notes, none of which was signed by his wife, and that the note of said date was made and taken by the bank in place of such several prior notes of Sowell; that Mrs. Sowell received no consideration for signing such note, and was not indebted to appellee prior to July 18, 1930; further, that appellant had no knowledge of such facts until after the hearing before the master. The motion was overruled.

The bill of complaint charged that Mr. and Mrs. Sowell executed the note in question, and that it evidenced a valid indebtedness. Appellant, living with Mrs. Sowell at the time suit was started, and both being defendants to the cause, was necessarily thrown into close association with her daughter, who testified for her on the hearing, and she should, and could, have ascertained from the latter all the facts incident to the execution of said note, and the consideration therefor. The motion did not disclose any reason why she failed to do this, nor did it show any diligence on her part to be advised as to such facts. The motion was properly overruled.

Decision largely turns upon the nature and effect of the payment of the note of Sowell and Lon Peterson in 1925. Appellant testified that it was discharged by the payment of money which she had derived from the sale of some property which she had owned in Florida, and that her husband, with her authority and acting for her, made the payment.

The proof on the part of appellee,—both the oral testimony of its agent, and the bank records,—shows that on September 9, 1925, Lon Peterson came to the bank, said that he had sold some property in Florida, had the money to discharge the debt, and desired to do so; that the interest was computed, and Peterson gave his personal check, upon a bank in Miami, for the full amount, whereupon the note was surrendered to him. He stated that it was retained by them, and later lost in the Florida hurricane of 1926.

Peterson, upon the stand, testified that he paid the note August 15, 1925, with his wife's money, that she had received from the sale of property in Florida; that he made a record of the transaction, which he had in a book at home. He, however, did not produce the book. It is significant that he admitted he told the cashier he had come in to pay the note himself, and

also that he did not deny that he had said he had sold some Florida property and had the money wherewith to pay the debt. This justifies the belief that he, in fact, made such statement, and at variance with his testimony in the case.

It further appears that even if this created the relation of debtor and creditor between Sowell and appellant, she did not ask him for a note or any written memorandum of the debt, nor that he ever paid her interest thereon, though nearly seven years passed between September 9, 1925, when it was paid, and July 1, 1932, when the deed in question was executed.

Bert Peterson, son of appellant, stated that Sowell, several years before, said that he would like to have the payment for some work he was doing for appellant, applied upon the debt; that in December, 1931, he expressed a willingness to deed the property in issue to appellant in satisfaction thereof; that the witness communicated with appellant in January, 1932, and advised Sowell that she was willing to receive the deed in payment of the indebtedness; and that Sowell then stated there was no hurry, and he would wait until his wife returned from Florida, in order that she might join in the instrument.

It appears that nothing further was done until July 1, 1932, when the deed was executed and recorded. Sowell testified that he did not know where appellant was when the deed was drawn. It seems strange that with a transaction of such importance, he could not recall the presence of the grantee, if such were the fact, and from it may be reasonably inferred that the deed was hurriedly drawn, following the demand of appellee for payment of its debt, without the presence or knowledge of appellant.

Mrs. Sowell testified that the conveyance was made because her mother wanted a settlement. She did not, however, explain why or how appellant allowed the

matter to run for seven years, with no written evidence of indebtedness, and no demand by her for payment, until appellee began to insist that the Sowells' debt to it be discharged. Nor did she explain how she came to deed away her undivided one-half interest in the property, when she was not indebted to her mother. This would indicate that the deed of her interest, made without any consideration,—a purely voluntary conveyance,—was prompted by a desire to place her interest in the property where the bank could not subject it to satisfaction of the debt which she, with her husband, owed to it.

The conveyance, so far as the interest of Mrs. Sowell was concerned, was voluntary, and founded upon no consideration. As a result thereof, though she was indebted to appellee, she was rendered insolvent. Where this is true, the grantor has the burden of disproving the implication of fraud, as against pre-existing creditors, which the law raises, from the fact of making such conveyance. *Dillman v. Nadelhoffer,* 162 Ill. 625; *Moritz v. Hoffman,* 35 Ill. 553. There is nothing in the record to dispel or overcome such implication of fraud upon the part of Mrs. Sowell.

While relationship of the parties to such a transaction is not, of itself, a controlling fact, it is one which may excite suspicion, and is one to be taken into account in connection with all the other circumstances in the case, bearing upon the question of fraud. *American Hoist & Derrick Co. v. Hall,* 208 Ill. 597, 601; *Rindskoph, Stern, Lauer & Co. v. Kuder,* 145 Ill. 607.

No memorandum of the debt, from Sowell to appellant, if one existed, had ever been prepared, though seven years had elapsed; no interest had been demanded or paid, and no effort whatever had been made to collect same. This is not the method usually employed in business where a valid and subsisting

debt is in existence. *Frank v. King,* 121 Ill. 250, 254. It is a circumstance which casts suspicion upon the good faith of a conveyance, not made until another creditor has indicated his purpose of collecting his debt from the grantor.

The foregoing enumerated circumstances, coupled with the further facts that Mrs. Sowell, under no legal obligation to, and not indebted to appellant in any way, was willing to, and did, make her a gift of her undivided one-half interest in the property, which left Mrs. Sowell, though indebted to appellee, insolvent; the unsatisfactory character of the testimony of Lon Peterson as to the payment of the note, made in September, 1925; the celerity with which the Sowells, on July 1, 1932, executed the deed in question, after hearing but the day before that appellee was about to seek enforcement of its demand against them; the uncertainty of whether the grantee was present or knew of its execution, as evidenced by the testimony of Sowell, and the close and intimate relationship of the parties, justified the master in finding, and the chancellor in decreeing, that the deed was made for the purpose of placing the property where it could not be subjected to the payment of appellee's claim, and, as a consequence, was fraudulent.

*Decree affirmed.*