**J. P. Strickland, Trading as J. P. Strickland and Company, Appellee, v. The Washington Building Corporation et al., Defendants.**

**Appeal of Archie M. Andrews, Appellant.**

**Gen. No. 38,957.**

Opinion filed November 30, 1936. Rehearing denied December 14, 1936.

SCHEIN & BECKWITH, of Chicago, for appellant; ERNEST SCHEIN and ABRAHAM W. BRUSSELL, of Chicago, of counsel.

JOSEPH F. ELWARD and WILLIAM C. McHENRY, both of Chicago, for appellee; JOSEPH F. ELWARD, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Strickland is a judgment creditor of the Washington Building Corporation, an Illinois corporation, of which defendant Archie M. Andrews was a director and stockholder. October 14, 1930, he filed his amended bill

against Andrews et al., setting up the rendition of a judgment in his favor against the corporation, the relationship of Andrews and his certain acts with reference to the corporation, and prayed that Andrews might be held personally liable for the amount of the judgment because while a director of the corporation he assented to the creation of the debt of the corporation to the plaintiff, which was in excess of the amount of its capital stock, because he assented to the declaration and payment of a dividend whereby the corporation was rendered insolvent and the capital thereof impaired, and because he had not paid in full his subscription to the capital stock of said corporation.

Defendants answered denying the equity of the bill. The cause was put at issue and referred to a master, who filed his report finding in favor of the complainant. Objections which had been filed to the master's report and overruled were by order permitted to stand as exceptions. The exceptions, upon hearing, were overruled as to defendant Andrews and a decree entered against him on November 15, 1935, for the sum of $49,541, to reverse which he appeals.

Defendant contends that he fully paid for his stock in the corporation; that he did not assent to the creation of any corporate indebtedness in excess of the capital stock; that under the evidence the plaintiff is not such a creditor as is entitled to enforce any personal obligation against him as an assenting director; and that the chancellor erred in refusing to reopen the case as requested by defendant, in order to permit the introduction of other proper evidence in his behalf. Plaintiff contends there was no error in these respects and also contends, as the decree finds, that defendant, through the manipulation of various corporations controlled by him, took from the Washington Building Corporation assets under such circumstances as to render him liable as found by the decree.

After the record was filed in this court the plaintiff made a motion to dismiss the appeal ''for lack of jurisdiction'' because the record was not filed in this court within 35 days from the filing of the notice of appeal in the trial court, as provided by Rules 1 and 10 of this court. The motion has been reserved to the hearing and is argued in the briefs.

As already stated, the final decree in this cause was entered on November 15, 1935. The cause was heard upon the exceptions of defendant to the report of a master to whom it had been referred, and defendant's notice of appeal was filed in the cause on January 10, 1936. The record was not filed in this court until May 9, 1936. No order was entered extending the time for filing the same. The record shows on March 5, 1936, the plaintiff made a motion in the trial court to dismiss the appeal. On the following day defendant Andrews filed a motion with affidavit in support thereof, asking that his time be extended to April 9, 1936, to file the transcript of testimony taken before the master and have the same approved. On March 9, 1936, plaintiff withdrew without prejudice the motion to dismiss, and the court entered an order that the date for defendant to file his report of trial proceedings be extended to April 9, 1936, without prejudice to the contention of the plaintiff, and without any determination of the court as to ''whether or not there can be or should be any report of trial proceedings of this cause.''

On April 6th thereafter the defendant presented an instrument purporting to be such a report of proceedings of the court, and over the objection of the plaintiff the judge signed, approved and ordered the same filed. The report in substance certifies that the cause came on for hearing upon the pleadings and report of the master in chancery, and the evidence attached to his report, and the 80 exhibits used and taken in such hearing before the master.

It further certifies that neither the complainant nor the defendants introduced any further or additional evidence. The certificate of proceedings adds nothing to the knowledge of this court not already disclosed by the record.

The Civil Practice Act changed in material ways the law of this State with respect to the method by which litigants may obtain a review of judgments and decrees in civil cases. The sections applicable will be found in Illinois State Bar Stats. 1935, chapter 110, sections 74–92, ¶¶ 202–220, pp. 2448–51. Section 74 provides that an appeal may be taken by "notice of appeal," which · shall be deemed to present to the reviewing court all issues which were theretofore presented by appeal or by writ of error. Section 76 provides that no appeal shall be taken to the Supreme or Appellate Courts after the expiration of 90 days from the entering of the judg-ment appealed from except upon order of the review-ing court, which may be granted upon proper showing within one year from the entry of the order or decree. Section 79 provides that the Supreme Court may by general rules regulate the practice and procedure upon review. Section 90 provides that notice of the taking of the appeal shall be given to the opposing party or his attorney "in such manner as may be provided by rules." Paragraph 2 of section 76 provides that an appeal shall be deemed perfected when notice of appeal shall be filed in the lower court, and that no step other than this shall be deemed jurisdictional.

The Supreme Court adopted rules at the December 1933 term, and these were amended at the June term of that court in 1935. These rules prescribe the form and contents of the notice of appeal, that it must be served on the other parties within five days after filing; that a praecipe for record must be filed with the clerk within 10 days after filing of the notice, and that the opposite party, if he desires, must file his praecipe for other

parts of the record within five days; that the clerk shall prepare the record in chronological order, etc. The purpose of all these provisions is to expedite the business of the reviewing court and secure to litigants a speedy determination of their causes.

Plaintiff contends that a report of the master in chancery is a part of the record without being incorporated in a report of proceedings, and that a report of proceedings was here improper and unnecessary. Such was the law under the former practice, as stated in *Ferris v. McClure,* 40 Ill. 99, where the court said that the master's report was as much a part of the record as the bill, answer, replication or decree, and that no "Bill of Exceptions" was ever necessary or proper in a chancery case except to preserve oral evidence introduced upon the hearing under the statute allowing that to be done. In *Central Illinois Public Service Co. v. City of Sullivan,* 294 Ill. 101, the Supreme Court said that upon the hearing of a cause upon exceptions to the master's report, the report of a master was a part of the record without any certificate of evidence; that upon such a hearing where the reference was to report conclusions of law and fact no evidence other than that taken by the master would be heard; that it was essential the record should show it contained all the evidence heard, but not that it should appear from the certificate of the chancellor nor from the certificate of the master.

The plaintiff contends that the rule is similar under the Civil Practice Act; that as a matter of common sense the report of proceedings is intended to cover oral proceedings before the chancellor and matters not otherwise of record, but not to cover evidence taken before the master and already written up and made a part of his report, and therefore a matter of record; that this view is confirmed by the language of section 74, subsection 2 of the Civil Practice Act, which de-

scribes the trial record as including every writ, pleading, motion, order, affidavit or other document filed or entered in the cause; is consistent with rule 36 (1) (b) which recognizes a distinction between the "Report of Proceedings at the Trial" and the "original of the Master's Report"; harmonizes with the object which the statute and the rules are designed to accomplish, and is sustained by the opinion of the second division of this court in *West Side Trust & Savings Bank v. Damond,* 280 Ill. App. 343, where the court said in substance that an appellant could not extend the period allowed under the rules of the Supreme Court and this court for filing the record, by specifying in his praecipe a report of proceedings where the record showed that no such report was necessary or proper. Plaintiff suggests that the master's report with the evidence accompanying it is "a document filed in the cause" within the meaning of section 74 of the Civil Practice Act, and asserts that it is quite impossible to believe that the new practice, which was designed to liberalize procedure, should be held to impose a more stringent rule in this respect than existed under the old practice.

Defendant suggests that a report of proceedings was proper, in order to preserve a motion made by him to reopen the case and again send it to the master. This motion was supported by affidavit, and the motion, order and affidavit are here in the record proper. These are not in the report of proceedings submitted to the court by defendant. Moreover, that motion was heard before another judge and therefore if a certificate was proper it necessarily would have been made by the judge who heard the motion.

Defendant contends that decisions concerning the master's report under former statutes are not now applicable under the Civil Practice Act; that under the provisions of section 1 of that act, Illinois State Bar Stats. 1935, chapter 110, paragraph 129, page 2438, pro-

ceedings upon appeal are the same in both law and equity cases, unless there is some express statutory provision otherwise, as in section 92; that it was the intention of the legislature that the procedure in law and equity cases upon appeal should be identical. Defendant further contends that subparagraph (c) of Rule 36 of the Supreme Court broadens the subject matter that may be presented to a chancellor for a certificate of correctness. It is clear, defendant says, from an examination of all the provisions of the Civil Practice Act, that the legislature abolished the distinction between a bill of exceptions and a certificate of evidence and intended there should be only one name used to designate testimony taken at a judicial proceeding, namely, the report of trial proceedings. So assuming, he says that a fundamental concept of a report of trial proceedings is that it consist of evidence taken before a judicial tribunal, and that it is axiomatic that a trial cannot be had before one who is not a judicial officer; that the very concept of trial implies the existence of a judicial officer. Therefore, he concludes that it cannot be said that a stenographic report of testimony taken before the master is a report of a trial. He then goes on to argue, citing authorities, that a master in chancery is an officer of statutory origin; that the master has purely ministerial powers; that a master's report is purely advisory and is not binding on the chancellor, therefore the master is not a judicial officer but merely a source of information to the chancellor; that the transcript of testimony taken before him is not in law identical with or a part of his report, but the report is separate and distinct from such transcript. All this and much more may be conceded without determining the question arising here, which is whether it is under the Civil Practice Act necessary that the report of the master and the testimony taken by him be preserved

by a report of proceedings in order that the same may become a part of the record.

The cases show this was not true prior to the enactment of the Civil Practice Act. If it had been the intention of the legislature in the enactment of the statute, or of the Supreme Court of the State in adopting the rules to so provide, it is not conceivable that ambiguous language would have been used. We hold that a report of proceedings in this case was wholly unnecessary, and the defendant could not extend his time for filing his record in this court by a specification in his praecipe for a report of proceedings for the record. The appeal must be dismissed.

However, we have considered the appeal upon its merits and find defendant could not in any case have prevailed, for the reason that he is indebted to the Washington Building Corporation to an amount exceeding that for which the judgment against him was given. The corporation received its certificate from the secretary of state on December 29, 1919. Its capital stock consisted of 5,000 shares of preferred stock of the par value of $100 each, and 5,000 shares of common stock of no par value. Defendant Andrews organized, dominated and controlled this corporation. The preferred stock with the exception of two qualifying shares was transferred to him. In payment therefor and as the sole consideration he caused to be transferred to the corporation a leasehold of the premises known as 163 West Washington street, Chicago. A few days prior to the organization of the corporation he procured from the owners, the Chicago Herald Company, an agreement to transfer this leasehold to him or his assignee, for $200,000. The leasehold was so transferred to the building corporation January 3, 1920, and was the only consideration given for the stock issued to defendant. The court found that defendant was still indebted to the corporation in the sum of $300,000, on

account of this transaction, and we think the finding was justified. There is no competent evidence in the record tending to show either that the leasehold was in fact worth more than $200,000 on January 3, 1920, or that defendant had any reason to believe at that time that it was worth more than $200,000. In February, 1920, defendant caused the building corporation to issue bonds to the amount of $500,000, secured by a trust deed conveying this leasehold. These bonds were delivered to defendant, and in consideration thereof he delivered up the preferred stock theretofore issued to him in order that it might be canceled. It is true that on May 15, 1926, more than six years thereafter, the corporation sold the leasehold to Robert Bartlett for a stated consideration of $575,000. As a part of the consideration Bartlett assumed and agreed to pay the bonds. As a matter of fact, Bartlett paid in cash only $41,203.91, and this money was at once turned over by the building corporation to A. M. Andrews Investment Corporation, another organization which defendant also organized and controlled.

February 5, 1927, defendant Andrews sold $200,000 par value of these bonds to Stanley McCormick for $200,133.33, and on May 15, 1927, he sold to the same party $137,000 face value of the bonds for $139,430.70. The proceeds of the bond issue were appropriated by defendant to his own uses.

As already stated, there is no competent evidence tending to show that the leasehold on January 3, 1920, was worth more than $200,000. The sale thereafter made to Bartlett does not establish such value because it was remote in time, was not for cash, and there was no evidence tending to show either that the improvements on the premises were of the same value at the one time as at the other, or that the market price of such leaseholds had remained constant.

It appears that much evidence was in possession of and under the control of defendant Andrews which he did not produce upon the trial; that since January 1, 1926, he has not resided in the State of Illinois; that the corporate records of the building corporation and other companies likewise controlled by him have been taken outside of the State, where they still remain. Defendant did not appear and testify at the trial. His evidence was obtained by means of interrogatories directed to him demanding an answer as to specific questions under oath. It is true that he denied generally the allegations of the bill to the effect that the stock issued to him had not been paid for by him in full, and he now argues that in view of these answers in order to justify a finding for plaintiff on this point, his testimony should be overcome by evidence equivalent at least to that of two witnesses. He cites *Salsbury v. Ware,* 183 Ill. 505, to this point. There are two answers. First, the statements in the answer of the defendant were mere conclusions not responsive to the complaint or to the interrogatories. *Atkinson v. Foster,* 134 Ill. 473; *O'Brian v. Fry,* 82 Ill. 274.

Second, the rule contended for no longer obtains. It was a part of the old chancery practice provided for in section 21 of the Chancery Act, Illinois Revised Stats. 1931, chapter 32, section 21, but has been repealed by the Civil Practice Act which, by reason of the fact that the taking of evidence in this case did not begin before January 1, 1934, is applicable under rule 1 of the Supreme Court.

Defendant, however, contends that the court erred in denying a motion made by him on October 16, 1935, while the case was pending before the chancellor for a rereference and the opening of proofs in order, among other things, that he might produce competent testimony tending to show the value of the leasehold at the time it was transferred to the corporation. We think

the court did not err in this respect, since the defendant was guilty of gross negligence for which no adequate excuse was presented. *Matthews v. Whitethorn,* 220 Ill. 36; *Johnson City State Bank v. Sowell,* 277 Ill. App. 10; *Rouss v. Kendrick* (Tenn.), 41 S. W. 1074, 1077.

Defendant argues quite at length that the chancellor erred in applying what is called the "Actual Value Rule" as distinguished from the "Good Faith Rule" in determining the value of the property in the time of its transfer to the corporation in payment for defendant's stock. He cites *Coleman v. Howe,* 154 Ill. 458. Without question the "Actual Value Rule" was in force in Illinois at the time of this transaction. The weight of authority is overwhelming to this effect. *Dee Co. v. Proviso Coal Co.,* 290 Ill. 252. It may be true that the rule has been changed by a later statute, but this cannot operate retroactively. The transfer of property worth only $200,000 in cash by the owner thereof to a corporation which he also owns and controls, in payment of an obligation of $500,000, indicates bad faith and fraud as to subsequent creditors. This one point is decisive of this case upon the merits. It is not necessary to consider other grounds of liability. For reasons indicated the appeal must be dismissed.

*Appeal dismissed.*

O'CONNOR and McSURELY, JJ., concur.