Eldo F. Beery et al., Appellants, v. W. S. Hurd et al., Appellees.

Gen. No. 9,055.

Opinion filed April 20, 1938.

W. A. Doss, of Monticello, JOHN R. FITZGERALD, of Decatur, and ARNOLD SIEVERS, for appellants.

REED & REED, of Monticello, for appellees Martha Hurd, Lillian Hurd and W. S. Hurd.

MR. JUSTICE RIESS delivered the opinion of the court.

Plaintiff appellants, as judgment creditors, filed a verified bill of complaint in chancery under the former Practice Act, praying discovery of assets of defendant appellee Walter S. Hurd alleged to be held by Martha Hurd or Lillian Hurd and seeking to set aside two certain deeds from said defendants Walter S. Hurd and Lillian Hurd, his wife, conveying to Martha Hurd, his mother, all interest in a residence property in Decatur, Macon county, and in and to 320 acres of farm land, being the north half of a certain Section 36 in Piatt county, on the ground that the deeds were fraudulent,

made without consideration, and given to hinder and delay creditors. The bill of complaint was dismissed for want of equity at the cost of complainants and an appeal from that order was taken to this court.

Verified answers were filed by said defendant appellees Martha Hurd, Walter S. Hurd and Lillian Hurd denying that said deeds were given without adequate consideration or were either fraudulent or made to hinder or delay creditors and averring that they were given in part payment and satisfaction of a bona fide pre-existing indebtedness due from Walter S. Hurd to Martha Hurd for moneys borrowed from and advanced by her to him and for unpaid cash and crop rentals due her for use and tenancy of part of the premises conveyed in said deeds.

Defendant Walter S. Hurd is a son of said Martha Hurd and of Henry Hurd, who departed this life in 1919. The Hurd family, consisting of Henry Hurd and Martha Hurd, his wife; their son, Walter S. Hurd, and Lillian Hurd, his wife, and Pauline Hurd, daughter and only child of Walter S. and Lillian Hurd, who later married one Turner Nearing, lived together in the residence property in controversy in the city of Decatur, from the year 1907 until the death of said Henry Hurd in 1919 and so continued to reside therein at all times thereafter.

In 1916, Henry Hurd and Martha Hurd, his wife, conveyed a life estate in the northwest quarter of said Section 36, being 160 acres of land in Piatt county, to Walter S. Hurd and Lillian Hurd with the remainder in fee simple to the heirs of their bodies and also reserving to themselves a life interest therein during the life of Henry Hurd. Said grantors Henry Hurd and Martha Hurd at that time also conveyed the northeast quarter of said Section to Walter S. Hurd in fee simple, reserving unto themselves and to the survivor a life estate therein and further providing that at the

death of the survivor, Walter S. Hurd should pay the sum of $6,000 to his brother, Oscar Hurd.

Upon the death testate of Henry Hurd in 1919, his will was duly probated in the county court of Macon county, in which he bequeathed a personal estate consisting of notes, grain, bank stock and other personal property of substantial value to his said widow, Martha Hurd. Walter Hurd thereafter continued to farm all of the lands in Piatt county, and in 1926 and subsequent years, the same was so farmed by Walter Hurd under a renewed written lease from Martha Hurd.

On April 4, 1932, all interest of Walter S. Hurd and Lillian Hurd to the Decatur residence property and the half section of 320 acres of farm lands in question were conveyed by two quitclaim deeds to Martha Hurd, and the deeds, each reciting a consideration of $4,000 "and other valuable considerations," were delivered and filed for record on that day.

At the time of the conveyance of the Decatur residence property, a mortgage lien of $2,000 was held against the same by the Millikin Trust Company as trustee; Martha Hurd held the homestead interest therein of the value of $1,000, and a judgment lien existed against the same in the sum of $2,320 by virtue of a judgment taken in the circuit court of Macon county by one J. R. Chapman on March 29, 1932, and thereafter duly assigned to Turner Nearing, which lien remained in full force and effect at the time of the conveyance of said property on April 4, 1932. It also appears that on April 11, 1932, Walter S. Hurd had conveyed a certain 10 acre tract in Macon county to his brother, Oscar B. Hurd, for money advanced to him and that this conveyance, not in controversy herein, was made in payment of said indebtedness.

On March 28, 1932, Walter S. Hurd executed without request a chattel mortgage on his livestock and

implements to his mother, Martha Hurd, to secure a promissory note of that date for $3,260 due two years after date, which mortgage was not recorded nor foreclosed, and the property was subsequently levied upon and sold at public vendue by judgment creditors of Walter Hurd.

At the time of the transfers of the above real estate, Walter Hurd was indebted to several of the plaintiff appellants and judgments were thereafter taken by them against him between the dates of June 27 and July 28, 1932, on which judgments executions were issued to the sheriff of Piatt county, duly served and returned "No Property Found," and said judgments in excess of $7,000 remain unsatisfied. Lena S. Lugg, an original party defendant, recovered judgment on July 23, 1932, in the circuit court of Macon county, against both Walter S. Hurd and Mrs. Walter S. Hurd, being Lillian Hurd, the wife hereinabove referred to, in the amount of $3,069.20 on an indebtedness existing before said transfer was made; execution issued thereon and was duly returned "No Property Found." A transcript of said Lugg judgment was filed in the office of the circuit clerk of Piatt county on September 15, 1934, and execution issued thereon, but said judgment has not been paid.

Under prayer for discovery, defendants produced and plaintiffs and defendants offered in evidence numerous books of account, records of bank deposits and pass books, itemized records of sales of crops and products of the farm between the years 1921 and 1932, inclusive; numerous notes executed by Walter S. Hurd to Martha Hurd and to other parties hereto and 69 exhibits were so admitted for the plaintiff and 14 exhibits for the defendant, together with voluminous oral testimony preserved in the record herein, some of which oral evidence was of a contradictory and controversial nature.

The special master, to which the cause was referred, reported the testimony and made findings and conclusions recommending the relief prayed for in the bill, to which objections were filed by defendant appellees, overruled by the special master, stood as exceptions, and when so heard by the trial court, were sustained, and a decree was entered dismissing the suit for want of equity at the cost of complainants.

It appears from the evidence that in 1916, Martha Hurd and Henry Hurd had reserved a life interest in the northwest quarter of said Section 36 in Piatt county upon which the buildings were located for and during the life of Henry Hurd only. Henry Hurd having died in 1919, Martha Hurd appeared to have no further interest therein.

The book accounts showing itemized yearly records of the gross income from crops for the years 1921 to 1932, inclusive, with bank deposit accounts and oral evidence offered, showed the income from crops to have been kept in one account covering such income from the entire north half of said Section 36 and aggregated somewhat in excess of $50,000; the greater proportion approximating four-sevenths thereof was, however, shown to have come from the northeast quarter, wherein Martha Hurd had reserved a life interest and was entitled to all rents and profits accruing therefrom, being an amount in excess of $17,000 on the basis of rentals payable under the written lease thereof, as renewed in 1926. The credits of rents and taxes paid to or for Martha Hurd by Walter Hurd, as shown by the books and oral evidence, were $5,562.23, and although it appears from the evidence that Martha Hurd repeatedly asked for and insisted upon settlement by Walter Hurd and that some of the above payments were so made at intervals and promises made by him to make settlement of the remainder, there still remained due and unpaid on April 4, 1932, rents and profits in an amount in excess of $11,000.

It also appears from the evidence, notes and exhibits, that Walter Hurd was indebted to Martha Hurd on two promissory notes: one for $2,500 dated in 1924 for bona fide cash loans deposited in bank for purposes shown in the evidence, upon which two years interest had been paid, and the other note for $3,500 dated July 1, 1926, for moneys which she had advanced to him to meet liability for assessments on bank stock owned by him.

All of these claims, aggregating in excess of $17,000, principal, on which interest was also chargeable, were in the nature of a pre-existing bona fide indebtedness due from Walter Hurd to Martha Hurd at the time of the execution and delivery of the deeds to the real estate in question and constituted a valuable consideration as recited in the deeds. There was considerable conflict in the testimony of a number of witnesses as to the fair cash market value of the premises conveyed to Martha Hurd; the farm lands being estimated by plaintiffs' witnesses at valuations ranging from $150 to $175 per acre and by defendants' witnesses, which included men who were making valuations for purposes of loans for financial institutions in that vicinity, at $85 to $90 per acre. The evidence showed that at the time of this transfer in 1932, few if any sales of real estate were being made in that vicinity and that values in the real estate market were at a low ebb.

By the conveyances from Walter Hurd and Lillian Hurd to Martha Hurd in 1932, their life interests only in the northwest quarter passed to Martha Hurd and their interest in fee simple in the northeast quarter was so conveyed and merged with the life estate already vested in Martha Hurd, and subject to the further payment of a $6,000 lien to Oscar Hurd upon the death of Martha Hurd as provided in the original deed. The Decatur residence property was so conveyed subject to the homestead rights of Martha Hurd

and to the judgment lien of $2,300 held by Turner Nearing and a $2,000 mortgage lien held by the Milli kin Trust Company. It was also shown that Martha Hurd had contributed about $4,000 in money to the construction of the residence building thereon. The fair cash market value of this property was estimated as being from $6,000 to $8,500.

Each of the two quitclaim deeds conveyed all interest of Walter S. Hurd and Lillian Hurd to these properties reciting a consideration of $4,000 "and other valuable considerations." It thus appears that these conveyances were based upon adequate valuable consideration as between the parties thereto.

It is contended by the plaintiffs that a portion of the claims of Martha Hurd covering unpaid rentals prior to 1927 were barred by the statute of limitations, and that the bar of the statute could not be waived as against the claims of other creditors. The defense of the statute of limitations has been held by the courts of review of this State to be a personal one as between the debtor and the creditor and to be availed of can only be pleaded or taken advantage of by the debtor or someone standing in his place or stead and cannot therefore be availed of by creditors of Walter S. Hurd who held no judgment or other lien against the premises at the time of conveyance. *Woodford County Nat. Bank v. Conklin,* 292 Ill. App. 53, 10 N. E. (2d) 864; *Fish v. Farwell,* 160 Ill. 236, 43 N. E. 367; *Emory v. Keighan,* 94 Ill. 543; *Roberts v. Tunnell,* 65 Ill. App. 191; *Cartwright v. Cartwright,* 68 Ill. App. 74; *Manchester v. Tibbetts,* 121 N. Y. 219, 24 N. E. 304.

The fact that Martha Hurd lived in the family relation with Walter Hurd did not destroy her rights to demand or receive payment of any bona fide indebtedness due to her from her son, Walter, nor was she required to bring suit or place her claims in judgment, as contended by plaintiffs, before accepting payment

thereof by a bona fide conveyance of real estate. While the fact that the grantor and grantee were members of the same family subjects the transaction to closer scrutiny than if the parties were strangers, this fact does not of itself attain the dignity of proof of fraud as to third persons, since one relative may protect another who is his creditor if the transaction is in good faith; nor does the fact that the parties are so related create a presumption that there was not a bona fide indebtedness. *Byerly v. Byerly*, 363 Ill. 517, 2 N. E. (2d) 898; *Woodford County Nat. Bank v. Conklin, supra; American Hoist & Derrick Co. v. Hall*, 208 Ill. 597, 70 N. E. 581.

Fraud is never to be presupposed, but must be established by convincing proof and by the greater weight of the evidence, as men are presumed to be honest and their dealings with one another are assumed to be just and without taint. *Byerly v. Byerly, supra; Woodford County Nat. Bank v. Conklin, supra; Third Nat. Bank of Mt. Vernon v. Norris*, 331 Ill. 230, 162 N. E. 829; *American Hoist & Derrick Co. v. Hall, supra; First Nat. Bank of Flora v. Cunningham*, 267 Ill. App. 430.

The fact that a conveyance would render the debtor insolvent or that the same was made at a time when the grantor was being pressed to make payment of demands to other creditors would not render the same fraudulent or void as to creditors when based upon such adequate consideration and in payment of a bona fide pre-existing indebtedness. A debtor has a right to prefer a creditor, when he acts without fraud, even though he devotes all of his property to the preferred creditor, leaving nothing for his other creditors to resort to. *Third Nat. Bank of Mt. Vernon v. Norris, supra; Woodford County Nat. Bank of Conklin, supra; First Nat. Bank of Flora v. Cunningham, supra*; 27 C. J. 629.

The book accounts kept by the defendant Walter S. Hurd of rents and proceeds of sale of crops and products of the farm and of all payments of taxes, insurance, repairs or credits on rentals were offered in evidence together with pass books and documentary evidence offered by the respective parties of a voluminous nature, all of which were duly considered by the trial court and by this court upon review, and we hold that the decree of the trial court finding as above is amply sustained by the evidence. While we cannot undertake to recite in detail or analyze the voluminous evidence offered herein, this court is of the opinion that the trial court did not err in decreeing that the transfer of all interest of Walter S. Hurd to Martha Hurd in the real estate in question was not shown to be fraudulent, without adequate consideration nor made to hinder or delay creditors.

Subsequent to making the above conveyance, the defendant Lena S. Lugg secured a judgment in Macon county against both Walter S. Hurd and Lillian Hurd upon a promissory note in the sum of $3,069.28. In her answer, she sets up this judgment and asks "that the rights and interest of all the parties may be determined herein as though they had filed a cross bill in this behalf, and that upon a hearing thereof that an order may be had in this behalf compelling Defendants, or some of them, to satisfy judgment against the said Walter ,S. Hurd and Mrs. Walter S. Hurd and that the Defendant may have such other and further relief as equity may require and to your Honor shall seem meet and just."

After the decree was entered, a stipulation was entered into by the parties and an order entered by the court to the effect that a cross-bill or counterclaim might be filed by her setting up her alleged counter action and asking for affirmative relief, but for some reason the same was not filed and does not appear in

the record. It does not affirmatively appear from the pleadings or evidence that the conveyance by Lillian Hurd to Martha Hurd rendered the former insolvent nor that the conveyance was made to fraudulently hinder or delay her creditors. The original bill was filed and sought relief only for the creditors of Walter Hurd. By failing to set up her alleged counter action against Lillian Hurd in a cross-bill or counterclaim with appropriate prayer for relief and to sustain the allegations thereof, the defendant Lugg is now in no position to insist in this court upon a reversal of the decree rendered in the court below. *Lewis v. Lewis*, 316 Ill. 447, 147 N. E. 411; *Rolinitis v. Rolinitis,* 335 Ill. 260, 167 N. E. 68.

In *Higgins v. Higgins,* 219 Ill. 146, 153, 76 N. E. 86, 89, the court said: ''It is a primary rule, always enforced and sustained by numberless decisions, that the allegations of the bill, the proof and the decree must correspond; that facts disclosed by the evidence which would warrant relief will not sustain a decree where the facts are not alleged in the bill. (*Dorn v. Geuder,* 171 Ill. 362.) . . . In such a case the court will permit the complainant to amend the bill so as to correspond with the proofs; but the bill was not amended, and the court by the decree found a different state of facts from those stated in the bill.''

It is the opinion of this court that the errors assigned by the appellants are not well taken and that the trial court did not err in dismissing complainants' bill for want of equity at the cost of complainants. The decree of the circuit court of Piatt county will therefore be affirmed.

*Decree affirmed.*