Grace Seaborn and Delma Mink, Appellees, v. Herbert A. Miller et al., Defendants. Myrtle S. Miller et al., Appellants.

Gen. No. 9,410.

October term, 1943.    Heard in this court at the
Opinion filed March 14, 1944.

FRANK J. HARRISON, of Streator, for appellants.

BARRY MUMFORD, of Pittsfield, for appellees.

MR. JUSTICE RIESS delivered the opinion of the court.

Two of the Defendants, Herbert A. Miller and Myrtle S. Miller, his wife, have appealed from a decree of foreclosure of a real estate mortgage lien on premises described in the mortgage and complaint, which mortgage was executed and delivered by said defendants on August 5, 1941 to the Farmers Bank of Baylis, Baylis, Illinois, as mortgagee, to secure the payment of four promissory notes described therein, which were drawn by said mortgagors payable to the order of mortgagee, with 6 per cent interest per annum from date until paid. The notes and mortgage, copies whereof were attached to the complaint, were alleged to have been duly assigned on September 13, 1941

without recourse to and acquired by the original plaintiff, R. E. Seaborn, since deceased, as assignee, for a consideration of $6,294.29, and his interests were alleged to have since passed to the substituted plaintiffs Grace Seaborn and Delma Mink, appellees as owners and legal holders thereof. The amount found and adjudged to be due as principal, interest and solicitors' fees on three unpaid notes and certain defaulted general taxes and special assessments which were paid by the plaintiff was $6,204.29. A sale of the mortgaged premises, subject to defendants' statutory right of redemption was ordered by the chancellor in default of payment of said amount together with costs of suit by defendant mortgagors, for the reversal of which orders and decree an appeal to this court was perfected.

The complaint, which was filed on July 11, 1942, alleged the execution and delivery of the above promissory notes and mortgage on August 5, 1941, in the respective principal amounts of $500; $1,000; $1,500 and $3,294.29, which $500 note was alleged to have been subsequently paid by said defendants on December 20, 1941, leaving unpaid the principal sums of the three remaining notes, aggregating $5,794.29, together with accrued interest thereon, solicitors' fees and the certain general taxes and special drainage liens and assessments paid by plaintiff as set forth in the amendment to the complaint filed on August 10, 1942, being an aggregate amount of $6,696.90 so alleged to be due the plaintiff.

Defendants were ruled to plead to the complaint, and in default thereof a decree *pro confesso* was entered against them and the cause was referred to the master in chancery on August 17, 1942 for proofs, findings, conclusions and recommendations as to form of decree. Thereafter, on September 29, 1942, on verified motions of defendants, the order of reference was set aside and defendants were granted leave and or-

dered to file answers instanter. The answer so filed by Defendant Herbert A. Miller, the fee simple owner of the mortgaged premises, admitted execution and delivery to said bank of all the notes and mortgage in question but denied the amount of the indebtedness to be as alleged and averred that the same did not exceed $4,000; denied plaintiff's ownership of the notes and mortgage and disclaimed knowledge as to assignment thereof to the plaintiffs; averred that defendants had agreed with L. T. Graham, one of plaintiff's original attorneys and president of said bank, that said notes were to be executed for the amount of gross funds loaned and advanced for the payment of a judgment and liens for defaulted taxes, interest, and claims for liens chargeable against said lands; admits the payment of the $500 mortgage note due on January 1, 1942, and avers that the above notes and mortgage were executed and delivered in excess of the amount originally contemplated and agreed upon with said Graham and further avers that defendants believe that the Plaintiff Seaborn had no personal financial interest in said notes and mortgage and no authority to elect and exercise an option to declare the whole amount of said indebtedness to be due and payable, or to file suit therefor.

No counterclaim nor prayer for affirmative relief was filed or set forth in the answer. No averments of fraud nor allegations concerning breach of the alleged agreement with Graham or of any duty on his part in the premises is alleged. The remaining defendants were tenants on the mortgaged premises and did not join in the appeal.

Plaintiffs' reply denied any alleged contract or agreement with Graham as averred and realleged ownership and right of recovery of the unpaid balance due on the mortgage indebtedness as set forth in the amended complaint and to a decree for equitable relief as prayed therein.

While the cause was pending before the master, a motion by the defendants to require the plaintiff and his agents to produce for defendants' inspection in the office of the master in chancery all books, records, files and memoranda pertaining to the mortgage indebtedness was denied by the chancellor.

It also appears that after some delay, following notices to defendants' counsel to file objections before the master to his proposed report, which delay defendants' counsel alleged to have been due to lack of time to consult with associate counsel and prepare the same, the master's report was filed with the court. Defendants then filed objections to the report and asked a second order of re-reference, which was denied. The master's report was subsequently approved and the decree was entered.

The defendants appellants allege prejudicial and reversible error in the action of the court in denying the above mentioned motions; in finding that when the suit was instituted and heard, the Plaintiff Seaborn was the owner of said notes and mortgage and contended that such finding was against the manifest weight of the evidence; error in finding the amount due the plaintiff on mortgage indebtedness to be $5,794.29, as contrary to the manifest weight of the evidence and error in entering the decree in favor of the plaintiff.

Concerning the alleged error in overruling defendants' motion to require that all papers relating to the alleged mortgage indebtedness in the possession of plaintiff or any of his agents be produced for inspection, a sound discretion in relation thereto is lodged in the court and unless some description or reasonable degree of certainty as to the papers to be produced and the apparent materiality and necessity for their production is shown, the court may in the proper exercise of its discretion under the statute cited deny such motion. (Sec. 9, ch. 51, par. 9, Ill. Rev. Stat.

1943 [Jones Ill. Stats. Ann. 107.074].) Only an abuse of such discretion justifies a reversal. Section 9 of the Evidence Act, *supra,* provides that "The several courts shall have power in any action pending before them, upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue." Before an order can be issued under this act there must be good and sufficient cause shown upon reasonable notice and that the evidence sought to be obtained is pertinent to the issues in the case. *Red Star Laboratories Co. v. Pabst,* 359 Ill. 451, 453, 194 N. E. 734. From the record, it does not appear that any material evidence sought by the defendants which was admissible under the pleadings was thereby improperly or prejudicially suppressed or made unavailable to the defendants. The matter of the alleged agreement and transactions between defendants and witness L. T. Graham appear fully in the direct and cross-examination of witnesses and the material records in relation to such transactions were subsequently admitted in evidence. It does not appear that the defendants were in any way prejudiced in presenting their defense by the ruling of the court in relation to said motion.

As to the alleged error of the court in its refusal to again refer the cause to the master for filing objections to the latter's report, it appears that reasonable opportunity had been afforded the defendants to present or file such objections prior to filing of the master's report and we do not deem the alleged reasons for failure to file the same on account of insufficient notice or opportunity to be valid. From the record, it appears that the defendants were negligent and dilatory in filing their motions and pleas and that even after default and decree *pro confesso* had been entered against them under the original complaint, the

court in the liberal exercise of its discretion, had set the same aside and permitted the defendants to answer and to fully present their defenses before the master. All that is required of the master is that reasonable notice and opportunity be given to file the objections to his report. Although said objections and motions were subsequently filed with and stricken or overruled by the court, the defendants were not harmed thereby. We find nothing substantial under the facts or as questions of law that has not been preserved for review in the record which could in any way have prejudiced the rights of said defendants by denial of the motion. Ordinarily, in the exercise of his sound discretion, a chancellor will grant a motion for re-reference of a cause to permit the parties to file objections to the master's report in the absence of negligent failure to file the same in apt time and upon good cause shown. It was not, however, an abuse of discretion to deny the motion under the circumstances disclosed by the record and no harmful or prejudicial effect to the defendants appears from such ruling. *Matthews v. Whitethorn,* 220 Ill. 36, 77 N. E. 89; *Strickland v. Washington Bldg. Corp.,* 287 Ill. App. 340, 4 N. E. (2d) 973. Where no objections or exceptions are filed to the master's report, the findings of fact of the master are conclusive as against a party, who has the right, but does not object in apt time to the master's report. *Postel v. Hagist,* 251 Ill. App. 454, 459; *Johnson v. Voudrie,* 233 Ill. App. 572; *Singer, Nimick & Co. v. Steele,* 125 Ill. 426; *Gehrke v. Gehrke,* 190 Ill. 166; *Barney v. Lincoln Park Board of Com'rs,* 203 Ill. 397.

Concerning the amount of the alleged indebtedness, the conversations had between Attorney Graham and Defendant Miller as to the Sny Island Levee Drainage judgment for delinquent assessments, tax liens and other claims included in the amounts of the original notes, there is a conflict between the testimony

of said Graham and Miller in relation thereto, and the defendants assert that the finding of the master as approved by the court is contrary to the manifest weight of the evidence. When the record is carefully read, we cannot so hold, but believe that the probative value of their respective statements in such controversy was a factual matter to be properly determined by the master and chancellor below, not to be disturbed by this court unless contrary to the manifest weight of the evidence. *Day v. Wright,* 233 Ill. 218, 222, 84 N. E. 226. The amounts involved and referred to were extensively discussed between Attorney Graham and Defendant Miller on several different days prior to the time the notes and mortgage were given. The respective contentions as to the gross amounts so due clearly appear in the record. Defendant insisted that the same amounted to less than that contended for by Attorney Graham who was then the president of the Farmers Bank of Baylis. The bank president refused to make the loan on other conditions than those to which the defendant finally acceded under facts and circumstances wherein it appears from plaintiffs' proofs that both parties were fully advised of their respective claims and the amount so finally agreed upon was merged in and set forth in the four notes, which were given and signed by the defendants. The mortgage was given to secure the payment of the aggregate sum so determined which became merged in the papers themselves. It is properly contended by plaintiffs that the defendants cannot now disclaim or dispute the same in the absence of fraud. On December 20, 1941, the first mortgage note of $500 was voluntarily paid by the defendant and the present suit is on the remaining notes. It may be kept in mind also that no allegation of fraud appears in the record. To be availed of as a defense, fraud, like all other affirmative defenses, must be plainly set forth in the answer and must be proven. (Subpar. 4, sec. 43,

Civil Practice Act, sec. 167, ch. 110, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 104.043].) It is a well recognized rule of law that fraud is never to be pre-supposed, but must be established by convincing proof and by the greater weight of the evidence. *Beery v. Hurd,* 295 Ill. App. 124, 14 N. E. (2d) 656; *American Hoist & Derrick Co. v. Hall,* 208 Ill. 597, 601, 70 N. E. 581. However, no fraud having been so alleged and proven, the contentions that the said notes and mort-gage were given or said transactions made under fraudulent circumstances are without merit and need not be further considered by this court.

Further objection is made to the allowance of a solicitors' fee to the plaintiff under the provisions of the notes and mortgage, predicated upon the alleged ground that the Graham firm was interested and that Graham senior and Plaintiff Seaborn had been and were engaged in a number of mutual business trans-actions extending over many years, including the one in question in which the said attorney was an inter-ested party. It appears that subsequent to the filing of the original complaint and the answer thereto by defendants' counsel, other counsel were engaged by Plaintiff Seaborn who continued to represent the plaintiff as well as the substituted plaintiffs as their counsel of record in the conduct of the mortgage fore-closure proceedings and that such services were the usual, ordinary and necessary services performed in the conduct of such litigation; that the amount of such solicitors' fees was agreed upon and included in the original notes and contracts and that the court did not err in allowing solicitors' fees to the plaintiff as-signee's for such necessary services so performed by said attorneys. We deem the allowance thereof, under the circumstances disclosed by the record, to have been proper.

The ownership of the securities by Plaintiff Seaborn is brought into the question. There is substantial

proof in the record that he advanced and paid to the mortgagees the full amount of the mortgage indebtedness in order to acquire the same and that said securities were duly indorsed to him without recourse; that he subsequently paid the amount of delinquent general taxes and drainage instalment assessments which were in arrears and necessarily paid in order to protect his mortgage lien under the terms thereof. It thus appearing from a preponderance of the evidence that he acquired the same in good faith and for said valuable consideration, he was entirely within his rights in enforcing the mortgage lien and indebtedness against defendants' real estate in accordance with the terms of the mortgage. It is further provided that in the event of default in the payment of any of the indebtedness due under the terms of the mortgage, the legal owner and holder thereof may declare the entire amount of the debt to be due and bring suit therefor. This was done by the plaintiff, acting within the express terms of the contract contained in the notes and mortgage and we find no force in defendants' contention to the contrary. The chancellor below did not err in entering the decree of foreclosure and in providing that upon default in the payment of the amount therein found and decreed to remain due and unpaid from the defendants to the plaintiffs, the mortgaged premises be sold to satisfy the amount of said indebtedness and costs of the proceeding.

We find no reversible error in the record and the decree of the circuit court of Pike county is affirmed.

*Decree affirmed.*